Spence Law Office, P.C.
Robert J. Spence, Esq. (RS3506)
Proposed Attorneys for the Debtor and
Debtor-in-Possession
55 Lumber Road, Suite 5
Roslyn, New York 11576
Tel.:(516) 336-2060
Fax: (516) 605-2084

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
In re:

KAFKA CONSTRUCTION INC.

Debtor.

------------------------------------------------------------X

Chapter 11
Case No.: 18- 42637-ess

**APPLICATION PURSUANT TO §§ 105(A) AND 363 OF THE BANKRUPTCY CODE FOR AN ORDER (1) AUTHORIZING THE MAINTENANCE OF THE ASSIGNMENT/PROGRESS PAYMENT SYSTEM WITH THE SCHOOL CONSTRUCTION AUTHORITY ("SCA") FOR PENDING PROJECTS (2) AUTHORIZING PAYMENT OF PRE-PETITION WAGES and BENEFITS, SUBCONTRACTORS, SUPPLIERS, UNIONS AND CRITICAL VENDORS ENGAGED IN WORK ON THE PENDING PROJECTS OR, (3) ALTERNATIVELY, MOTION FOR EMERGENCY, INTERIM AND PERMANENT USE OF CASH COLLATERAL PURSUANT TO SECTION 363(C) OF THE BANKRUPTCY CODE TO MAKE THE FOREGOING PAYMENTS.**

Kafka Construction, Inc., the debtor and debtor in possession ("KAFKA" or the "Debtor"), by and through its proposed attorneys, Spence Law Office, P.C., files the within Application to 1) authorize payments of its employees, subcontractors, and unions by the School Construction Authority using progress payment funds that are being withheld from the Debtor and related relief (the "Motion") in this case. In support of the Application, the Debtor respectfully represents and sets forth to the court as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.

2. Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b).

4. The statutory predicates for the relief sought in this Motion are 11 U.S.C. §§ 105(a) 363(b), 507(a)(4), (a)(5), and 541 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

5. The relevant facts are set forth at length in the Affidavit of Costas Katsifas In Support and Pursuant to Local Bankruptcy Rule 1007-4 [ECF Doc. No. 15] (hereinafter, the "Katsifas Affidavit").

6. On May 7, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

7. The Debtor remains in possession of its assets and continues to manage its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. No trustee, examiner or committee of creditors has been appointed in this case.

9. KAFKA, formed in 1987, as a for-profit corporation engaged in the construction business.

10. KAFKA operates its business at 39-24 28th Street, Long Island City, New York.

11. KAFKA is the general contractor on numerous construction projects with the New York City School Construction Authority (the "SCA"), including, but not limited to, and on information and belief, Cobble Hill High School, I.S. 96, P.S. 110, P.S. 114, P.S. 333, P.S. 369, P.K. 391, P.K. 597, Curtis High School, and Julia Richman High School (collectively, the "Pending Projects").

12. The Debtor has worked on projects for the SCA for almost 30 years. The Debtor has no projects pending with anyone other than the SCA. Until the PS 63 Project (described below), the Debtor had never been terminated or placed into default status by the SCA.

13. In or around February 2015, SCA, as Owner, entered into an agreement with KAFKA, as general contractor, whereby KAFKA agreed to provide certain construction labor and services in connection with the public improvement known as PS63-Manhattan Exterior Masonry, Parapets, Roofing, Flood Elimination, Contract No. C000013151 (The "PS 63 Project").

14. In 2016, the SCA terminated KAFKA on the PS 63 Project. Thereafter, the SCA stopped paying KAFKA directly and has been paying the Debtor's employees, subcontractors, suppliers and Unions directly. Each pay period the Debtor executes an assignment (the "Assignments") allowing progress payments to be made to the employees, subcontractors, suppliers and Unions directly. KAFKA believes the termination was wrongful and in 2017, KAFKA commenced a lawsuit against the SCA entitled "*Kafka Construction, Inc. - v. - New York City School Construction Authority,*" Queens County Supreme Court, Index No. 712472/2017.

15. The SCA holds funds payable to KAFKA and the subcontractors, unions, and material suppliers. The Debtor believes that at least a portion of the funds held by the SCA constitute Article 3 Trust funds which are for the benefit of subcontractors, unions and material suppliers on the Pending Projects. KAFKA and the SCA have been cooperating in permitting the assignment by KAFKA of "progress payments" to subcontractors, unions and material

3

suppliers on the Pending Projects so that the Pending Projects can be completed as expeditiously as possible and without additional and unnecessary cost and expense. KAFKA is presented with invoices from the subcontractors, unions, material suppliers (the "Payees") and if there is no dispute, KAFKA executes an assignment of any of KAFKA's rights in the funds. The SCA then pays the Payee directly by mailing a check to them. This procedure for payment of Article 3 trust funds is referred to hereinafter as the "*Assignment/Progress Payment System.*"

16. By this Motion, KAFKA seeks an order authorizing the maintenance and continuation of the Assignment/Progress Payment System for Pending Projects and to allow the SCA to pay certain pre-petition obligations of KAFKA which have been assigned to the specific recipients and otherwise allowing the payment of pre and post-petition claims of Critical Vendors.

17. Prior to the commencement of this case, in the ordinary course of business, KAFKA maintained in the ordinary course of its business the Assignment/Progress Payment System with the SCA to ensure that services and materials to Pending Projects continues uninterrupted.

18. Undisputed payments due for services and materials on the Pending Projects are Article 3 Trust funds and therefore not property of the estate.

19. There are currently at least eight subcontractors, two unions and five employees working on KAFKA's projects with the SCA. The Assignments that are currently pending, but upon information and belief, have not been paid, are annexed to the Katsifas Affidavit as **Exhibit A**. The funds provided under the Assignments are due to the employees, unions, and subcontractors for the improvement of real property located at Curtis High School, Julia Richman High School, Cobble Hill High School, the Department of Education Bureau of Supply,

4

and P.K. 391.

20. All projects that KAFKA is engaged in by the SCA are bonded and insured by a surety bond (the "Bond"). KAFKA's is covered by a surety bond with Berkley Regional Insurance Company and Berkley Insurance Company ("Berkley"). Berkley filed a limited response [ECF Doc. No. 16] wherein they noted that they had no objection to the continuation of the Assignment/Progress Payment System.

21. KAFKA's viability as a general contractor is dependent upon KAFKA's uninterrupted payment for pre- and post-petition materials and services provided by its critical vendors made up of at least the eight subcontractors, two unions and five employees working on KAFKA's projects with the SCA and who receive or received Assignments (hereinafter the "Critical Vendors").

22. Certain of the Critical Vendors are either the sole source of critical services or materials to pending projects or, even if alternative sources were available, the transition process to such alternate sources would likely result in lengthy disruption, delays and higher costs for the same services and materials. Any interruption in the payment of Critical Vendors will have a detrimental effect on KAFKA's operations, ability to pay its Critical Vendors. The Debtor seeks to pay Critical Vendor claims where nonpayment of such claims would lead to the interruption of the delivery of essential goods and services or would seriously disrupt KAFKA's operations.

23. KAFKA estimates that the maximum amount needed to pay the prepetition Critical Vendor pre-petition claims is $359,661.14[1] based on the Assignments annexed to the Katsifas Affidavit.

24. KAFKA's reorganization efforts require the continued and uninterrupted service

---

[1] Berkley calculated a different number than the Debtor and the Debtor hopes to have the issue resolved before the hearing on this application.

of employees in order to support continuing operations and to maintain the services and materials necessary for KAFKA's business. The employees and contractors will suffer undue hardship and, in many instances, serious financial difficulties without the relief requested in this motion. Without the requested relief, KAFKA's stability would be undermined at the outset of the Chapter 11 case.

25. The Debtor submits that allowing the payment of the Critical Vendors for pre and post-petition obligations is in the best interests of the Debtor and its estate.

## RELIEF REQUESTED

26. By this Motion, the Debtor respectfully requests the entry of an order pursuant to section 541 holding that the progress payments are held in trust under Article 3-A of the New York State Lien Law and as a result, to the extent that trust beneficiaries are not paid, the progress payments are not property of the estate; or an order pursuant to 105(a), 363(b), 507(a) and 1114 of the Bankruptcy Code: (a) authorizing, but not requiring the Debtor to maintain the Assignment/Progress Payment System so that the Debtor can continue to provide assignments to the SCA providing for and allowing the SCA to make payment to the Debtor's current employees, suppliers, subcontractors and unions of prepetition compensation, benefits, expenses and obligations in accordance with Assignment/Progress Payment System established by the Debtor prior to the Petition Date.

## BASIS FOR RELIEF REQUESTED

**A.     The progress payments held by the SCA are trust funds under Article 3-A of the New York Lien Law and are not property of the estate to the extent that trust beneficiaries are unpaid**

27. Property interests in bankruptcy are defined by state law. <u>Butner v. United</u> States,

440 U.S. 48, 55 (1979).

28.     New York Lien Law, Article 3-A, Section 70 imposes a trust upon all funds dedicated to an improvement of a parcel of real property, and designates the recipient of the funds, whether an owner, general contractor, or first tier subcontractor as the trustee for such funds until the claims of the limited beneficiaries of the trust fund are paid off or discharged. The beneficiaries of the trust fund are limited to each "subcontractor, architect, engineer, surveyor, labor or materialman" who contributed to the improvement of real property. NY Lien Law §71(2)(A).

29.     Normally, the SCA would make the progress payments directly to the Debtor and the Debtor would hold those payments in trust until all beneficiaries under the Lien Law are paid off or discharged. In the instant matter, the SCA, which, upon information and belief, owns the properties that the Debtor is engaged in completing the Pending Projects, and otherwise acts as the owner of the properties on behalf of the City, has withheld the project payments from the Debtor based upon an alleged default under the PS 63 Project.

30.     A portion of the monies held by the SCA are not Article 3 monies and are a receivable of the Debtor, but these funds have yet to be liquidated and appear to be in dispute. The Debtor will attempt to resolve these "other" non-Article 3 monies with the SCA.

31.     The SCA is a public benefit corporation established in 1988 by the New York State Legislature under the New York State Public Authorities Law and is responsible for the design, construction, improvement, rehabilitation and repair of the New York City public schools. NY Public Authorities Law, Article 8, Title 6, §§1725 et seq. It is respectfully submitted that funds obtained by the SCA are held specifically for this primary purpose.

32.     While the progress payments held by the SCA are subject to the claims of the

Debtor, under Article 3-A of the New York Lien Law they are only subject to the Debtor's claims after the claims of the beneficiaries under Article 3-A have been paid off or discharged.

33. Any funds paid by the SCA to Employees, Unions, and Subcontractors by way of assignment from the Debtor are trust funds that cannot be considered not part of the estate under 11 U.S.C. §541. Accordingly, the Debtor requests that the Court authorize payment by the SCA of pre- and post-petition debts to Critical Vendors through the Assignment/Progress Payment System.

### B. Maintaining current payments to Employees, Unions and Subcontractors are necessary to preserve the estate

34. Should the Court not recognize the funds to be paid as trust funds under Article 3-A of the New York Lien Law, it is respectfully submitted that the Court should authorize payment of Employees, Subcontractors and Unions under 11 U.S.C. §§ 105(a) 363(b), 507(a)(4), and (a)(5).

35. Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the claims of a debtor's employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within one hundred eighty 180 days before the Petition Date, and claims against the Debtors for contributions to employee benefit plans arising from services rendered within the 180 days before the Petition Date, are afforded priority status to the extent of $12,850.00 per employee. On information and belief, the largest Employee pre-petition claim is held by George Diakoumakos in the amount of $12,164.00, which is within the priority limit. The Subcontractors are owed significantly more, and the Debtor is requesting that they be paid in the ordinary course of business as was done pre-petition.

36. Section 363(b)(1) of the Bankruptcy Code states that: The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

8

the estate. 11 U.S.C. § 363(b)(1). If the debtor's determination to use estate assets represents a reasonable business judgment, the bankruptcy court should approve such use. *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp*.), 772 F.2d 1063, 1071 (2d Cir. 1983).

37. The relevant provision of section 105(a) of the Bankruptcy Code states that: The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. 11 U.S.C. § 105(a).

38. The Critical Vendors are essential to the continued operation of the Debtor's business and successful reorganization, and the Critical Vendors' morale directly affects their effectiveness and productivity. Consequently, it is critical that the Debtor continues, in the ordinary course, those personnel policies, programs, and procedures that were in effect prior to the Petition Date, namely the Assignment/Progress Payment System. If the payment of any of the obligations are not timely paid post-petition, the Critical Vendors will suffer extreme personal hardship and may be unable to pay their daily living and business expenses. In addition, failure to pay the Unions could result in a cessation of work. These circumstances undoubtedly will adversely affect their performance and similarly impact the Debtor's reorganization effort to the detriment of all parties in interest.

39. In addition, it would be inequitable to require the Debtor's Critical Vendors to bear personally the cost of any business expenses they incurred prepetition, for the benefit of the Debtor with the understanding that they would be reimbursed promptly.

40. Payment of all Critical Vendor obligations in accordance with the Debtor's prepetition business practices is in the best interests of the Debtor's estate, its creditors, and all parties in interest and will enable the Debtor to continue to operate its business in an economic and efficient manner without disruption. The Critical Vendors are central to the Debtor's

operations and are vital to this reorganization. A significant deterioration in employee morale at this critical time undoubtedly would have a devastating impact on the Debtor, the value of the Debtor's claims and business. The total amount sought to be paid herein is relatively modest compared with the size of the Debtor's overall business and the importance of the Critical Vendors to the Debtor's reorganization efforts and the Pending Projects.

41.  The Debtor believes that the obligations to any employees qualify as priority claims under section 507(a)(4) and (a)(5). The Debtor submits, however, that to the extent any Employees are owed in excess of $12,850.00 on account of Employee Obligations for Prepetition Compensation, payment of such amounts is necessary and appropriate and is authorized under both section 363(b) and section 105(a) pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also *Straus-Duparquet, Inc. v. Local Union No: 3 Int'l Bd. Of Elec. Workers*, 386 F.2d 649 (2d Cir. 1967) (separation pay obligations arising in connection with a postpetition employee lay-off are administrative claims).    The Debtor respectfully submits that the same holds true for all Critical Vendor obligations.

42.  Numerous bankruptcy courts have approved payment of prepetition claims for compensation, benefits, and expense reimbursements similar to those described herein on the grounds that the payment of such claims was necessary to effectuate a successful reorganization. See e.g., *In re Winn-Dixie Stores, Inc., et al*, Case No. 05-11063 (RDD) (Bankr. S.D.N.Y. February 22, 2005); *In re Tower Automotive, Inc*., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 3, 2005); *In re Loral Space & Communications Ltd., et al.*, Case No. 03-41710 (RDD) (Bankr.

S.D.N.Y. July 15, 2003); *In re Acterna Corporation, et al.*, Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. May 6, 2003); *In re Global Crossing Ltd., et al.*, Case No. 02-40188 (REG) (Bankr. S.D.N.Y. Jan. 28, 2002).

43. Accordingly, pursuant sections 105(a), 363(b), and 507(a)(4) and (a)(5) of the Bankruptcy Code, the Debtor seeks authority to pay all Critical Vendor obligations as they become due, and to continue at this time the *Assignment/Progress Payment System*, as such practice, program, and policy was in effect as of the Petition Date.

44. Without the relief requested herein the Critical Vendors will suffer undue hardship and, possibly serious financial difficulties, the Debtor's stability would be undermined.

**C.    Alternatively, The Debtor Requests Authorization for the Use of Cash Collateral**

45. In the unlikely event that any of the funds being paid by the SCA hereunder constitute "cash collateral" of the Debtor's secured creditors, Alma Bank and Berkley, the Debtor requests emergency, interim and permanent use of cash collateral pursuant to section 363(c) of the bankruptcy code to make the foregoing payments utilizing the Assignment/Progress Payment System, and asks that the Court set any conditions of said use pending a final hearing.

46. Berkley has already consented to the Applications based on the conditions of their responsive papers and counsel for the Debtor has spoken with the SCA who also consented to the maintenance of the Assignment/Progress Payment System.

**RESERVATION OF RIGHTS**

47. Nothing herein is meant to or should be construed as a waiver of the Debtor's or the Estate's rights to assets and other claims. Specifically, and by way of example and not exhaustive of all such reservations, the Debtor and the Estate reserve all rights and claims in and to the monies held by the SCA and all claims against the SCA. This motion is filed to allow for

the Pending Projects to be completed in a timely manner and to mitigate any additional claims against the Debtor while reserving all rights of the Estate and the Debtor.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order, pursuant to sections 105(a), 363(b), 507(a), 541 and 1114 of the Bankruptcy Code: (a) holding that to the extent payments are held in trust under Article 3-A of the New York State Lien Law and as a result, to the extent that trust beneficiaries are not paid, the progress payments are not property of the estate; (b) authorizing, but not requiring the Debtor to maintain the Assignment/Progress Payment System so that the Debtor can continue to provide assignments to the SCA providing for and allowing the SCA to make payment to the Debtor's current employees, suppliers, subcontractors and unions of prepetition compensation, benefits, expenses and obligations in accordance with Assignment/Progress Payment System established by the Debtor prior to the Petition Date, and (c) for such other, further and different relief as the Court deem just, proper and equitable.

Dated: Jericho, New York
      May 16, 2018

                                            SPENCE LAW OFFICE PC
                                            Proposed Attorneys Debtor and
                                            Debtor-in-Possession

                                            By: */s/ Robert J. Spence*
                                            Robert J. Spence, Esq. (RS3506)
                                            55 Lumber Road, Suite 5
                                            Roslyn, New York 11576
                                            Te: (516) 336-2060
                                            Fax: (516) 605-2084