SPENCE LAW OFFICE, P.C.
Attorneys for the Debtor
Robert J. Spence, Esq.
55 Lumber Road, Ste 5
Roslyn, New York 11576
516-336-2060

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

In re:                                                  Chapter 11

KAFKA CONSTRUCTION, INC.,                               Case No. 18-42637 (ESS)

                          Debtor.

-------------------------------------------------------------------------x

## FIRST AMENDED CHAPTER 11 PLAN FILED
## BY KAFKA CONSTRUCTION, INC

## <u>INTRODUCTION</u>

Kafka Construction, Inc. (the "Debtor") proposes the following First Amended Chapter 11 Plan (the "Plan"), which provides for the resolution of all Claims against and Interests in the Debtor in the Chapter 11 Case.

# ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,

## COMPUTATION OF TIME AND GOVERNING LAW

A.    Defined Terms

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to Sections 503(b) or 507(a)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date and through the Effective Date; and (b) fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code, including U.S. Trustee Fees.

2.    "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days following the Effective Date of the Plan.

3.    "*Allowed*" means, with reference to any Claim or Interest, or any portion thereof (i) with respect to which a proof of Claim was timely and properly filed on or before the Bar Dates, and no objection thereto has been made by the Claims Objection Bar Date, or (ii) as to which any objection to its allowance has been settled, waived or satisfied through payment, or withdrawn, or has been denied by a Final Order, (iii) that has been allowed by a Final Order, (iv) as to which the liability of the Debtor, and the amount thereof, are determined by Final Order of a court of competent  jurisdiction other than the Court, (v) that is expressly allowed in a liquidated amount in the Plan or (vi) which has been listed by the Debtor in the Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed.  A proof of Claim that is not timely filed (or not deemed timely filed) shall not be "Allowed" for purposes of distribution or voting under the Plan.

4.    "*Alma*" means Alma Bank, the Debtor's pre-petition Lender and first priority secured creditor.

5.    "*Alma Claim*" means the Allowed claim of Alma in the amount of approximately $844,000.00 as of the Petition Date, secured by all of the Debtor's assets that do not constitute Article 3A funds.

6.      "*Alma Guaranty*" means collectively each and every guaranty agreement entered into by Costas Katsifas, Christopher Vardaros, and any other guarantor, in favor of Alma and providing a guaranty of indebtedness and obligations owed by the Debtor to Alma, including in respect of the Alma Claim.

7.      "*Alma Mortgage*" means collectively each and every mortgage (including that certain Collateral Mortgage, made as of September 28, 2017, by Costas Katsifas and Christina Katsifas in favor of Alma with respect to property at 39-28 28th Street, Long Island City, NY), deed of trust, pledge and security agreement entered into by Costas Katsifas, Christina Katsifas, Christopher Vardaros, and any other grantor or mortgagor in favor of Alma and providing collateral security for indebtedness and obligations owed by the Debtor (or any guarantor) to Alma, including in respect of the Alma Claim. "*Article 3A*" means Article 3A of the New York Lien Law.

8.      "*Article 3A Claim*" means any Claim, inclusive of the Berkley Article 3A Claim, with a right to payment from the Debtor or the Estate which are protected by the trust fund established in favor of the claimant under Article 3A.

9.      "*Article 3A Funds*" means the funds from specifically identified Completed Construction Project(s) wherein there remain Allowed Article 3A Claims on a specifically identified Completed Construction Project - and only to the extent of said claims and only to the extent the monies were paid on said specific project(s) - per the SCA Settlement.

10.     "Non-Article 3A Funds"  means (a) funds from the SCA Settlement on specifically identified Completed Construction Projects for which there exist no related Allowed Article 3A Claims, (b) funds left over from a Completed Construction Project after payment of the related Allowed Article 3A Claims on said project(s), and (c) any other funds in the Estate.

11.     "*Ballot*" means the ballot distributed to each eligible Holder of a Claim or Interest in the Voting Classes, on which ballot such Holder of a Claim or an Interest may vote for or against the Plan.

12.     "*Ballot Deadline*" means the date and time set by the Bankruptcy Court by which the Debtor must receive all Ballots.

13.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

14.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of New York, having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to Section 151 of title 28 of the United States Code, the United States District Court for Eastern District of New York.

15.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under Section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as may be amended from time to time.

16.     "*Berkley*" means Berkley Insurance Company and Berkley Regional Insurance Company, the Debtor's Surety.

17.     "*Berkley Article 3A Claim*" means the claim(s) of Berkley obtained by assignment in the amount of approximately $2.7 million, consisting of approximately $2.7 million paid by Berkley on account of unpaid Article 3A Claims, subject to objection by the Debtor.

18.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

19.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

20.     "*Causes of Action*" means any Claim, cause of action (including avoidance actions), controversy, right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, debt, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort (including fraud), in law or in equity, or pursuant to any other theory of law, including violations of state or federal securities laws.

21.     "*Chapter 11 Case*" means the chapter 11 case commenced by the Debtor, which is currently pending before the Bankruptcy Court.

22.     "*Claim*" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

23.     "*Claims Bar Date*" means August 6, 2018 (or November 5, 2018 for Governmental Units), the applicable deadline by which a Proof of Claim must have been filed, as established by order of the Bankruptcy Court dated June 1, 2018.

24.     "*Claims Objection Bar Date*" means the date that is 120 days after the Effective Date of the Plan or such later date as may be fixed by order of the Bankruptcy Court.

25.     "*Claims Register*" means the official register of Claims.

26.     "*Class*" means a category of Holders of Claims or Interests as set forth in Article III of the Plan in accordance with Section 1122(a) of the Bankruptcy Code.

27.     "*Completed Construction Projects*" means all construction projects completed by the Debtor whether before or after the Petition Date.

28.     "*Confirmation*" means the entry on the docket of the Confirmation Order.

29.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order (within the meaning of Bankruptcy Rules 5003 and 9021).

30.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

31.     "*Confirmation Objection Deadline*" means the deadline for filing objections to Confirmation of the Plan.

32.     "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

33.     "*Contract Completion*" means the date on which a contract of the Debtor for the Ongoing Construction Projects, which is secured by bonds issued by Berkley has been completed in accordance with the contract's terms, the contract work is one hundred percent (100%) complete, accepted by the owner of the Ongoing Construction Project and there are no claims asserted against the Debtor or Berkley under the contract.  To the extent funds have not been released by the owner, and to the extent there are unpaid Article 3A funds which have not been paid to the subcontractors, materialmen and any other party that has a claim to the funds or a claim against Berkley pursuant to each specific contract; Berkley shall have the right to hold the amount of the unpaid Article 3A funds in cash collateral to satisfy claims owed to the Claimants under that particular contract.  Upon the payment of the claimant's outstanding indebtedness, that amount of cash collateral held by Berkley for that particular contact shall be released to the Reorganized Debtor.

34.     "*Cure Obligations*" means all (a) amounts required to cure any monetary defaults and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults (or such lesser amount as may be agreed upon) under any Unexpired Lease of Real Property that is to be assumed by the Debtor pursuant to the Plan.

35.     "*Debtor*" means Kafka Construction, Inc.

36.     "*Disallowed*" means any Claim or Interest that is not or that is no longer Allowed.

37.     "*Disclosure Statement*" means the Disclosure Statement relating to the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

38.     "*Disclosure Statement Approval Order*" means the Order approving the Disclosure Statement and certain procedures for solicitation of votes on the Plan and granting related relief.

39.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed, and shall include any Claim that is designated as disputed pursuant to the Plan.

40.     "*Disputed Claims Reserve*" means the reserve to be created by the Reorganized Debtor held by Disbursing Agent to hold Cash, which reserve shall be held for the benefit of Holders of subsequently Allowed Claims for distribution according to the procedures set forth in Article VI and Article VII.

41.     "*Effective Date*" means the date that all conditions precedent specified in Article IX(B) of the Plan have been satisfied or waived.

42.     "*Entity*" shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

43.     "*Estate*" means the estate created for the Debtor on the Petition Date pursuant to Sections 301 and 541 of the Bankruptcy Code, which shall include the estate prior to the Confirmation Date.

44.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

45.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

46.     "*Fee Claims*" means all Claims for services rendered by a Professional through and including the Effective Date under Section 503(b) of the Bankruptcy Code.

47.     "*Fee Claims Bar Date*" means the first Business Day that is sixty (60) days following the Effective Date of the Plan.

48.     "*Final Decree*" means an order entered by the Court closing the Debtor's case after satisfaction of all obligations and duties under the Plan.

49.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek

certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

50.     *"General Unsecured Claim"* means any Claim against any Debtor that is not Secured and that is not:  (a) an Administrative Claim; (b) a Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) an Article 3A Claim; (f) the Berkley Claim; (g) the Alma Claim; or (h) an Interest.

51.     *"Governmental Unit"* shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

52.     *"Holder"* means any Entity holding a Claim or an Interest.

53.     *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

54.     *"Interests"* means the common stock or shares, and any other equity, ownership or profits interests of the Debtor and options, warrants, rights or other securities or agreements to acquire the common stock or shares, limited liability company interests, or other equity, ownership or profit interests of the Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtor subject to subordination pursuant to Section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

55.     *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

56.     *"Lien"* shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

57.     *"Local Bankruptcy Rules"* means the Local Bankruptcy Rules for the Bankruptcy Court, as applicable to the Chapter 11 Case, as may be amended, modified, or supplemented from time to time.

58.     *"SCA Settlement"* means the $2,500,000 settlement of the SCA Adversary Proceedings.

59.     *"Ongoing Construction Projects"* means the closing out of the PS-369K project.

60.    "*Other Priority Claim*" means any Claim against the Debtor entitled to priority in right of payment under Section 507 of the Bankruptcy Code, other than: (a) an Administrative Claim; (b) a Fee Claim, or (c) a Priority Tax Claim.

61.    "*Other Secured Claims*" means a claim against the Debtor by a Creditor who has a valid equipment or vehicle financing agreement for the sale of construction equipment or vehicles with the Debtor.

62.    "*Petition Date*" means May 7, 2018.

63.    "*Plan*" means this Chapter 11 Plan, as amended, supplemented, or modified from time to time.

64.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

65.    "*Pro Rata*" means (a) the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class or (b) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

66.    "*Professional*" means an Entity:  (a) retained in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to Sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

67.    "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

68.    "Rejection Claims Bar Date" means the first Business Day that is thirty (30) days following the Effective Date of the Plan to file a rejection claim for a rejected Executory Contract or Unexpired Lease of Real Property.

69.    "SCA" means the New York City School Construction Authority.

70.    "SCA Adversary Proceedings" means Kafka v. SCA, Adv. Pro. No. 18-01090-ess and Kafka v. SCA, Adv. Pro. No. 19-01041-ess.

71.    "SCA Settlement" means the settlement of the SCA Adversary Proceedings and other claims by and between the Debtor and the SCA for $2,500,000.00.

72.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the

Debtor pursuant to Section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

73.    "*Secured*" means when referring to a Claim:  (a) Secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

74.    "*Unexpired Lease of Real Property*" means a lease of real property to which the Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

75.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

76.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

77.    "*Voting Classes*" means Classes 2, 3, 4, 6, and 7 of the Plan, whose Claims or Interests, as applicable, are Impaired and are entitled to vote on the Plan.

78.    "*Voting Deadline*" means the date to be set in the Disclosure Statement Approval Order for voting on the Plan.

79.    "*Voting Record Date*" means the close of business on the date that the Disclosure Statement Approval Order is entered by the Court.

B.    Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not

intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.      Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS, FEE CLAIMS AND PRIORITY TAX CLAIMS

A.      Administrative Claims

1.      Payment of Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Reorganized Debtor, each Holder of an Allowed Administrative Claim, will receive in exchange for full and final satisfaction, settlement, release, and compromise of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either:  (1) on the Effective Date or as soon as practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than five (5) business days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date, such Allowed Administrative Claims shall be paid pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action,

order, or approval of the Bankruptcy Court.  United States Trustee Fees shall be paid until the earlier of the entry of a final decree, dismissal or conversion of the Debtor's case.

        2.       Requests for Payment of Administrative Claims

Except for Fee Claims, unless previously filed, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtor no later than the Administrative Claims Bar Date.  The Reorganized Debtor may file an objection to any such request for payment.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor and the Estate and the Reorganized Debtor or any of the property of any of the foregoing, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be filed and served on the requesting party by the later of (a) 180 days after the Effective Date and (b) 180 days after the filing of the applicable request for payment of Administrative Claims, if applicable.

B.      Fee Claims

        1.       Final Fee Applications and Payment of Fee Claims

All final requests for payment of Fee Claims shall be filed no later than thirty (30) days after the Effective Date of the Plan.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Local Bankruptcy Rules and any prior Bankruptcy Court orders, the Allowed amounts of such shall be determined by the Bankruptcy Court.  The Reorganized Debtor may file an objection to any such request for payment in accordance with such procedures.  The Allowed amount of Fee Claims owing to the Professionals shall be paid in Cash to such Professionals when and to the extent such Claims are Allowed by a Final Order.

        2.       Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by the Reorganized Debtor on behalf of the Debtor or the Estate in connection with the consummation of the Plan.

C.      Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, in exchange for full and final satisfaction, settlement, release, and compromise of such Claim, Cash, payable on the Effective Date or as soon as reasonably

practicable thereafter, or, if such Priority Tax Claim is not an Allowed Claim on the Effective Date, on the date such Allowed Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter, in an amount equal to the amount of such Allowed Priority Tax Claim.  Payment of the Priority Claims hereunder shall also serve to release any other parties responsible for the Priority Claim.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Article III.

A.      Summary of Classification

All Claims and Interests, other than Administrative Claims, Fee Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and in connection with Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  Each Class shall be a Class of Claims or Interests in the Chapter 11 Case of the Debtor.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.      Class Identification for the Debtor

The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
| --- | --- | --- | --- |
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Alma Secured Claim | Impaired | Entitled to Vote |
| Class 3 | Berkley Secured Claim | Impaired | Entitled to Vote |
| Class 4 | Article 3A Claims | Impaired | Entitled to Vote |

| Class 5 | Other Secured Claims | Unimpaired | Not Entitled to Vote |
|---------|---------------------|------------|----------------------|
| Class 6 | Secured Claim of Meltzer, Lippe, Goldstein & Breitstone, LLP | Impaired | Entitled to Vote |
| Class 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 | Interests | Impaired | Not Entitled to Vote (Presumed to reject) |

B.      Treatment of Claims and Interests

1.      The treatment provided to each Class relating to the Debtor for distribution purposes and voting rights are specified below:

### Class 1 – Allowed Other Priority Claims Against the Debtor

(a)     *Classification*:  Class 1 consists of all Allowed Other Priority Claims against the Debtor under Section 507 of the Bankruptcy Code, other than: (a) an Administrative Claim, (b) a Fee Claim or (c) a Priority Tax Claim..

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Class 1 Other Priority Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release and compromise of each and every Allowed Other Priority Claim against the Debtor, each Holder of an Allowed Other Priority Claim shall, at the option of Reorganized Debtor:

(i)     be paid in full in Cash on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter; or

(ii)    otherwise, be treated in any other manner such that the Allowed Other Priority Claim shall be rendered Unimpaired on such date as is provided in the Confirmation Order or the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or as soon as reasonably practicable thereafter. Payment of the Other Priority Claims hereunder shall also serve to release any other parties responsible for the Priority Claim.

(c)     *Voting*:  Class 1 is Unimpaired, and Holders of Allowed Other Priority

Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Holders of Class 1 Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

## Class 2 – Allowed Alma Claim

(a)     *Classification*: Class 2 consists of the Allowed Alma Bank Claim. Alma filed a secured claim for $844,092.12.

(b)     *Treatment*: In exchange for full and final satisfaction, settlement, release and compromise of the Alma Bank Claim, as against the Debtor only and not any guarantor(s), Alma Bank shall be paid $195,000.00 (see Article IV(B) of the Plan) on the Effective Date from the Non-Article 3A Funds, and, subject to receipt of such funds on the Effective Date, Alma Bank hereby agrees to a carve-out of its secured interest in the balance of Non-Article 3A Funds in which Alma Bank has a first priority lien, to allow for payment of, in order of priority, the Administrative Claims, Allowed Priority Claims and General Unsecured Claims (the "Alma Carve-Out") as set forth under the within Plan. Upon the Effective Date, payment of the $195,000 and use of the Alma Carve-Out as set forth herein, Alma Bank shall release its lien(s) against the Debtor and the Estate and shall release the estate and the Debtor from any and all claims Alma Bank may have against the Debtor and or the Estate; provided, however, that for all purposes of maintaining, continuing and enforcing the Alma Guaranty and the Alma Mortgage, the Alma Claim and any liens securing the Alma Claim shall be deemed Allowed, not released, outstanding, unsatisfied and continuing. Alma Bank shall retain its secured interest in any non-estate collateral and shall be released from any and all claims the Debtor and the Estate may have against Alma Bank. For the avoidance of any doubt, nothing in this Plan shall affect, limit or impair Alma Bank's rights and claims under the Alma Guaranty or the Alma Mortgage, or otherwise against guarantors and non-Debtor, non-estate assets, including but not limited to real property encumbered by the Alma Bank secured claim. (See Plan, Article IV(B)).

(c)     *Voting*: Class 2 is Impaired, and Alma Bank is entitled to vote to accept or reject the Plan.

## Class 3 – Allowed Berkley Claim

(a)     *Classification*: Class 3 consists of the Allowed Berkley Secured Claim.

(b)     *Treatment*: Berkley's Secured Claim (as distinguished from the Berkley Article 3A Claim), shall be released upon the occurrence of the Effective Date and payment of the Berkley Article 3A Claim as provided for in

Class 4 of the Plan.  Since Article 3A trust funds are not property of the estate, Berkley does not have a security interest in the Article 3A trust funds except to the extent Berkley has taken assignments to the Article 3A claims ("Berkley 3A Claims") and in connection therewith, the rights of subcontractors of the Debtor to whom Berkley has made payments. Upon payment of its Class 4 claim, Berkley's security interest in the assets of the Debtor shall be extinguished and it shall release any and all liens filed against assets of the Debtor and the estate.   Berkley shall receive no distribution on Berkley's Secured Claim under the Plan. Berkley shall retain its secured interest in any non-estate, non-Debtor collateral.  Berkley's claims against guarantors, indemnitors and non-Debtor, non-estate assets including, but not limited to, non-debtor assets encumbered by Berkley, shall be unaffected by the Plan.

(c)     *Voting*:  Class 3 is Impaired, and Berkley is entitled to vote to accept or reject the Plan.

## Class 4 – Allowed Article 3A Claims

(a)     *Classification*:  Class 4 consists of Allowed Article 3A Claims including the Berkley Article 3A Claims.

(b)     *Treatment*:  Class 4 consists of Allowed Article 3A Claims including the Berkley Article 3A Claims holding legal and equitable rights to Article 3A trust funds.  Upon the Effective Date, unless such Allowed Article 3A Claim was satisfied prior to the Effective Date, the Article 3A claim will be reinstated only to the extent of allowing payment or partial payment under the Plan, and paid, from and after the Effective Date, without acceleration based on the filing of the Chapter 11 Case, in accordance with the provisions of Article 3A.  A schedule of the anticipated distribution to Article 3A Claims is annexed to the Disclosure Statement as **Exhibit C**.   To the extent the proceeds of any Completed Construction Project are insufficient to pay all Allowed Article 3A Claims with respect to any such project, said allowed Article 3A Claims shall be paid on a Pro Rata basis from available Article 3A Funds on a given Completed Construction Project, Said Pro Rata payment shall be in full satisfaction of the Claimants' Article 3A claim against the Debtor, the estate, Berkley, the SCA, and any responsible parties.  To the extent there are no Article 3A funds available to pay an allowed Article 3A Claim even a partial payment, such Allowed claims shall be entitled to a distribution under Class 6 of the Plan.[1]  For the avoidance of doubt, the foregoing sentence only applies to Allowed Article 3A Claims receiving no distribution under this Class 4.

---

[1] Berkley may vote such claim(s) in Class 7 but have agreed to waive any distribution under Class 7.

(c)     *Voting*:  Class 4 is impaired to the extent they do not receive payment in full of their Article 3A Claim(s), and each such Holder of an Allowed Article 3A Claim is entitled to vote to accept or reject the Plan.

## Class 5 –Secured Claim of Wells Fargo

(a)     *Classification*:  Class 5 consists of Class 5 consists of Wells Fargo Equipment Finance and its secured claim of $11,883.30.

(b)     *Treatment*:  The Claim for the leased equipment – a used 2006 Telehandler - will be sold or surrendered to Wells Fargo in full satisfaction of the Wells Fargo Secured Claim.   It is estimated that the value of the collateral is more than sufficient to satisfy the Wells Fargo Secured Claim in full.   Notwithstanding the foregoing the surrender of the collateral shall be in full satisfaction of the Wells Fargo Secured Claim regardless of the value of the collateral.

(c)     In the event that the Debtor sells collateral securing the Wells Fargo Secured Claim or surrenders such collateral, all expenses relating thereto, including but not limited to transportation, shipping, decommissioning and storage expenses, shall be borne by the Holder of the Wells Fargo Secured Claim.  The Debtor reserves the right to challenge the validity, nature and perfection of any Liens, and further reserve the right to avoid such Liens related to the Wells Fargo Secured Claim pursuant to the relevant provision of the Bankruptcy Code.

(d)     *Voting*:  Class 5 is Unimpaired, and is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

## Class 6 – Allowed Secured Claim of Meltzer, Lippe, Goldstein & Breitstone, LLP  (hereinafter, "Meltzer Lippe")

(a)     *Classification*:  Class 6 consists of the Allowed secured claim of Meltzer Lippe under Judiciary Law §475.

(b)     *Treatment*:  Class 6 Claimant shall receive a distribution on the Effective Date of $17,500 in full satisfaction of its secured claim and the balance of its $190,000 claim shall be reclassified as a General Unsecured Claim and paid in accordance with Class 7 of the Plan.   See Article IV (B) of the Plan.

(c)     *Voting*:  Class 6 is Impaired, and is entitled to vote on the Plan.

### <u>Class 7 – Allowed General Unsecured Claims</u>

(a)    *Classification*:  Class 7 consists of all Allowed General Unsecured Claims against the Debtor.

(b)    *Treatment*:  Class 7 consists of all Allowed General Unsecured Claims.  Holders of Allowed General Unsecured Claims shall receive a distribution pro rata of up to $30,000 under the Plan.  Estimated Percentage Recovery: Approximately 2%.   (See, Article IV (B) of the Plan).

(c)    *Voting*:  Class 7 is Impaired, and each Holder of an Allowed General Unsecured Claim is entitled to vote on the Plan.

### <u>Class 8  – Allowed Interests</u>

(a)    *Classification*:  Class 8 consists of all Allowed Interests.

(b)    *Treatment*:  Holders of Allowed Interests shall neither receive nor retain any property on account of such Allowed Interests under the Plan. The claims filed by the Interest Holders in this Class shall be recharacterized as equity claims and subordinated for all purposes to the Claims in Classes 1 through 7 of the Plan.

(c)    *Voting*:  Class 8 is Impaired, and each Holder of an Allowed Interest is deemed to reject the Plan and is not entitled to vote on the Plan.

C.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing shall affect the rights of the Reorganized Debtor, in respect of any Impaired or Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Impaired or Unimpaired Claims.

D.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtor shall seek Confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserves the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      Overview

From and after Confirmation, the Debtor will continue in business for the limited purposes of completing/closing out the PS-369K project if it has not been closed out already by the time of Confirmation.

The proceeds of the SCA Settlement shall be used to make the distributions required by the Plan by the Reorganized Debtor.  The Reorganized Debtor may also sell any equipment or vehicles, the proceeds of which shall also be used to make the Plan distributions.  Any equipment or vehicles not liquidated by the Reorganized Debtor shall be abandoned to the Debtor.

All distributions set forth in Article IV(B) shall be made from the Disbursing Agent's IOLA Account.  The Disbursing Agent shall have the authority to make distributions to all Claimants.

B.      Distribution of the SCA Settlement (per the Schedule of Completed Construction Projects in the SCA Settlement Agreement) and potential sale of vehicles:

(1)      Distributions from the SCA Settlement or any other funds that may be paid into the Estate from any other source (except for sale of equipment in paragraph B(2) below):

The proceeds and profits from each Completed Construction Project, as detailed in the SCA Settlement Agreement, and any other funds that come into the Estate (except for sale of equipment in paragraph B(2) below) shall be distributed by the Disbursing Agent, subject to the Plan and any Court Orders affecting same, as follows:

(i)      First, payment to any valid, unpaid Article 3A Claims pertaining to such Completed Construction Projects, to the extent <u>Article 3A Funds</u> exist on a given project (See Exhibit B annexed to the Disclosure Statement).   This shall include Berkley on account of any Allowed Article 3A Claims paid by Berkley with respect to such Completed Construction Project upon receipt by the Debtor of a detailed reconciliation of payments made by Berkley on account of Article 3A Claims with respect to such Completed Construction Project;

(ii)      Second, from the <u>Non-Article 3A Funds</u> , Alma shall receive a payment of $195,000.00 on the Effective Date and, subject to receipt of such funds on the Effective Date, agrees to a carve-out of its secured interest in the balance of Non-Article 3A Funds to allow for payment of, in order of priority, the Administrative Claims (including Debtor's Counsel's Fee Claim), Allowed Priority Claims, Secured Claim of Meltzer Lippe, and General Unsecured Claims as set forth herein;

(iii)     Third, after the payment of Article 3A Claims set forth in (i) and Alma Bank in (ii), above, payment to Administrative Claims, including Debtor's counsel and UST fees, NYS Administrative Tax Claim, Department of Labor Administrative Claim;

(iv)     Fourth, after the payments set forth in (i), (ii) and (iii) above, payment to Allowed Priority Claims;

(v)     Fifth, after the payments set forth in (i), (ii), (iii), and (iv) above, payment of $17,500.00 to satisfy the secured claim of Meltzer Lippe; and

(vi)     Sixth, to the extent any  Non-Article 3A Funds remain after the payments set forth in (i), (ii), (iii), (iv) and (v) above, Pro Rata to holders of Allowed General Unsecured Claims in the amount of up to $30,000 (approximately 2% dividend to Allowed Claims); and

(vii)     Distribution of any surplus Non-Article 3A Funds after payment of (ii)-(vi) above, shall be to Alma Bank.

(2)  Distribution of proceeds from potential sale of the Debtor's 2006 Lull Telehandler):

(i)     First, to pay any allowed secured interests in the Telehandler (Wells Fargo for the 2006 Lull Telehandler);

(ii)     Second, to the extent any proceeds remain after the payment of Secured Claims set forth in (i) above, to pay, in order of priority, the Administrative Claims, Allowed Priority Claims, Secured Claim of Meltzer Lippe, and General Unsecured Claims as set forth in B(1)(iii)-(vi) above; and

(iii)     Third, to the extent funds from the sale remain after payment of the claims in B(2)(i) and (ii), such funds shall be paid to Alma Bank:

C.     Insurance

On and after the Confirmation Date, the Reorganized Debtor will maintain customary insurance coverage, if appropriate and available, for the protection of the Reorganized Debtor including casualty and liability insurance.  Any insurance policies or rights of the Debtor with respect thereto shall be assigned to the Reorganized Debtor.

D.     Settlement of Disputed Claims

The Reorganized Debtor shall have authority to settle Disputed Claims on behalf of the Debtor without further approval of the Bankruptcy Court; provided, however, that settlement of Disputed Claims pursuant to which the Estate will pay $10,000.00 or more shall require the approval of the Bankruptcy Court.

E.     Substantive Consolidation

The Plan does not contemplate the substantive consolidation of the Debtor with any other Entity.

F.      Corporate Action

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects and all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), without any requirement of further action by the Interest holders, directors, members, trustees, officers, or managers of the Debtor or approval of the Bankruptcy Court.  The Reorganized Debtor shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor, including any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article shall be effective notwithstanding any requirements under non-bankruptcy law.

G.      Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtor and any of the Reorganized Debtor's directors, members, trustees, officers, and managers are authorized and directed to issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan as may be requested or directed by the Reorganized Debtor from time to time, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

H.      Disbursing Agent

The Debtor's counsel, Spence Law Office, P.C. shall serve as the Disbursing Agent with respect to all distributions to be made from the Estate.

I.      Dissolution of Entity

Upon the entry of the Final Decree or soon as reasonably thereafter, the Reorganized Debtor may, at its option, take any and all action to effectuate dissolution of the Debtor.  The Reorganized Debtor shall be authorized to retain an accountant to prepare and file state and federal tax returns to the extent necessary.

J.      Preservation of Rights of Action

The Reorganized Debtor shall have full authority to investigate and commence any other Causes of Action which may exist, including preference and fraudulent conveyance actions. The Reorganized Debtor shall have the right to seek a reduction and/or disallowance of any Claim

based upon the existence of a Cause of Action against the Holder of such Claim upon notice and hearing.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Reorganized Debtor will not pursue any and all available Causes of Action against them.  All rights to prosecute any and all Cause of Actions against any creditor, except as otherwise expressly provided in the Plan, are and shall be expressly reserved.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, all Cause of Actions are expressly reserved for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Cause of Actions upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

K.      Retiree Benefits

The Debtor is not obligated to provide retiree benefits.

# ARTICLE V.
## TREATMENT OF UNEXPIRED LEASES OF REAL PROPERTY AND EXECUTORY CONTRACTS

A.      Assumption of Unexpired Leases of Real Property

The Debtor is a party to one unexpired lease of real property, consisting of its headquarters at 39-24 28th Street, Long Island City, NY 11101.  As of the Effective Date, this lease shall be assumed, and all payments to be made thereunder shall be made by third parties, if at all, and not from the Plan funding described herein and in the Plan.  The landlord under the Unexpired Lease of Real Property, shall waive any distribution from the Reorganized Debtor under the Plan for any administrative claim it may have.

B.      All other leases, agreements and or Executory Contracts not otherwise assumed hereunder, are deemed rejected as of the Effective Date and any claims for such rejection must be filed by the Rejection Claims Bar Date.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      Timing and Calculation of Amounts to Be Distributed

Distributions under the Plan shall be made as set forth in Article IV(B) of the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or

Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII.  Except as otherwise provided herein, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim or Allowed Interest shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim or Interest plus any post-petition interest on such Claim or Interest payable in accordance with the Plan.

B.      Rights and Powers of the Reorganized Debtor

1.      Powers of the Reorganized Debtor

The Reorganized Debtor shall be empowered to, as applicable:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan; (c)  employ professionals to represent it with respect to his responsibilities; and (d) exercise such other powers as may be vested in the Reorganized Debtor by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtor to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Reorganized Debtor after the Effective Date (including taxes, other than income or other similar taxes of the Reorganized Debtor in an individual capacity) and any reasonable compensation and expense reimbursement Claims (including reasonable attorneys' fees and expenses) made by the Reorganized Debtor shall be paid from the Operating Fund, without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      Distributions on Account of Claims Allowed After the Effective Date

1.      Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Reorganized Debtor, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any

Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim(s) have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

       3.       Disputed Claims Reserve

Upon each making distribution as provided in Article IV(B), the Reorganized Debtor shall deposit in the Disputed Claims Reserve the amount of Cash that would have been distributed to the Holders of all Disputed Claims against the Debtor as if such Disputed Claims had been Allowed on such distribution date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum distribution purposes, to be the lesser of (a) the asserted amount of the Disputed Claim filed with the Bankruptcy Court, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, or (c) amount otherwise agreed by the Debtor and the Holder of such Disputed Claim for reserve purposes. To the extent the amount of Cash deposited in the Disputed Claims Reserve on account of Disputed Claims against the Debtor exceeds the amount of Disputed Claims against the Debtor (as of the funding of the Disputed Claims Reserve) that later become Allowed, the excess shall be distributed in accordance with the Plan.

D.       Delivery of Distributions and Undeliverable or Unclaimed Distributions

       1.       Delivery of Distributions in General

Except as otherwise provided herein, the Reorganized Debtor shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such distribution; provided that the manner of such distributions shall be determined at the discretion of the Reorganized Debtor; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder. If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

       2.       Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtor has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of three months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Reorganized Debtor, and shall be distributed by the Reorganized Debtor in accordance with the Plan, and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

3.      Manner of Payment Pursuant to the Plan

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtor by check or by wire transfer.

E.      Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      Resolution of Claims Against the Debtor

1.      Allowance of Claims Against the Debtor

On or after the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed  Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

2.      Prosecution of Objections to Claims Against the Debtor

The Reorganized Debtor shall have the exclusive authority to file objections to Claims against the Debtor, and to settle, compromise, withdraw or litigate to judgment objections to any and all Claims against the Debtor, regardless of whether such Claims are in a Class or otherwise.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim against the Debtor without any further notice to or action,

order, or approval of the Bankruptcy Court; provided, however, that settlement of Disputed Claims against the Debtor pursuant to which the Reorganized Debtor will pay $10,000 or more shall require the approval of the Bankruptcy Court. From and after the Effective Date, the Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises of Claims against the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

   3.  Time to File Objections to Claims Against the Debtor

   Any objections to Claims against the Debtor shall be filed on or before the Claims Objection Bar Date.

   4.  Estimation of Claims Against the Debtor

   The Reorganized Debtor may, at any time, and shall have the exclusive authority to, request that the Bankruptcy Court estimate (a) any Disputed Claim against the Debtor pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim against the Debtor, contingent Claim against the Debtor or unliquidated Claim against the Debtor, including during the litigation concerning any objection to any Claim against the Debtor or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim against the Debtor that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim against the Debtor, contingent Claim against the Debtor, or unliquidated Claim against the Debtor, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Reorganized Debtor may elect to pursue additional objections to the ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim against the Debtor that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

   5.  Expungement or Adjustment to Claims Against the Debtor Without Objection

Any Claim against the Debtor that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Reorganized Debtor and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor in all cases without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

B.    Disallowance of Claims

All Claims against or Interests in the Debtor held by any Entity from which property is sought by the Reorganized Debtor under Section 542, 543, 550, or 553 of the Bankruptcy Code or that the Reorganized Debtor alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Reorganized Debtor on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned Sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

EXCEPT AS PROVIDED FOR UNDER THE PLAN OR OTHERWISE AGREED TO BY THE REORGANIZED DEBTOR ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE (THAT DO NOT AMEND TIMELY FILED CLAIMS) SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE OF THE PLAN WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

C.    Amendments to Claims

On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE VIII.
## SETTLEMENT, RELEASES, EXCULPATIONS, INJUNCTIONS, AND RELATED PROVISIONS

A.    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan or relating to the contractual, legal, and subordination rights that a Holder of a Claim or

Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  Except as otherwise provided in the Plan a vote by a Holder of a Claim for or against this Plan does not constitute a waiver or release of any rights of the Debtor or the Estate, as applicable, or the Reorganized Debtor to object to that Holder's Claim on any basis, including pursuant to Section 502(d) of the Bankruptcy Code on the basis that such Holder has received or was the beneficiary of a preferential, fraudulent, or other voidable transfer of assets, regardless of whether any Claims, Causes of Action, or other rights of the Debtor or its Estate are specifically or generally identified herein or otherwise released pursuant to the General Release.

B.    General Releases

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE GENERAL RELEASE SET FORTH BELOW, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN AND FURTHER SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE GENERAL RELEASE IS:  (1) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF ACTION RELEASED BY THE GENERAL RELEASE; (2) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR; (3) FAIR, EQUITABLE, AND REASONABLE; (4) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (5) A BAR TO THE RELEASOR'S ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE GENERAL RELEASE.

1.    Releases of Debtor Parties

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY OR ON BEHALF OF THE DEBTOR, AND EACH OF ITS PROFESSIONALS, CONSULTANTS, REPRESENTATIVES, EMPLOYEES, OFFICERS, DIRECTORS, EQUITY HOLDERS, MANAGERS AND AGENTS AND CONSULTANTS, TOGETHER WITH THEIR SUCCESSORS AND ASSIGNS (THE "DEBTOR PARTIES"), THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH HOLDER OF A CLAIM OR INTEREST, WHETHER OR NOT SUCH CLAIM IS ALLOWED AND WHETHER OR NOT SUCH HOLDER OF A CLAIM OR INTEREST HAS VOTED TO ACCEPT OR REJECT THE PLAN, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGES AND RELEASES AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE DEBTOR PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES

WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, THE ESTATE, THE PLAN ADMINSTRATOR, THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIMS OR INTEREST THAT IS COMPRISED THEREOF, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTOR PARTIES AND ANY OF THE HOLDERS OF CLAIMS OR INTEREST, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASE, UPON ANY OTHER ACT OR OMMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, INCLUDING THE SELECTION AND APPOINTMENT OF THE PLAN ADMINSTRATOR AND THOSE THAT ANY OF THE RELEASORS WOULD HAVE BEEN LEGALLY ENTITTLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE RELEASING PARTIES; THE FOREGOING GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE RELEASORS EXPRESLLY SET FORTH IN AND PRESERVED BY THE PLAN, OR RELATED DOCUMENTS (INCLUDING THE TREATMENT OF CLAIMS HEREUNDER); PROVIDED FURTHER THAT NOTHING HEREIN SHALL ACT AS A RELEASE OF ANY OF THE DEBTOR'S OFFICERS OR DIRECTORS OR INDIVIDUAL GUARANTORS OR INDEMNITORS FOR ANY DEBTS DUE AND OWING TO ALMA OR BERKLEY ON ACCOUNT OF ANY GUARANTIES OR INDEMNITY AGREEMENTS EXECUTED BY THEM IN FAVOR OF ALMA OR BERKLEY, IT BEING UNDERSTOOD THAT THAT FOR ALL PURPOSES OF MAINTAINING, CONTINUING AND ENFORCING THE ALMA GUARANTY AND THE ALMA MORTGAGE, THE ALMA CLAIM AND ANY LIENS SECURING THE ALMA CLAIM SHALL BE DEEMED ALLOWED, NOT RELEASED, OUTSTANDING, UNSATISFIED AND CONTINUING; PROVIDED FURTHER THAT NOTHING HEREIN SHALL LIMIT THE LIABILITY OF ANY ATTORNEYS TO THEIR RESPECTIVE CLIENTS PURSUANT TO N.Y. COMP. CODES R. & REGS. TIT. 22 §1200.8 RULE 1.8(H)(1)(2009) OR THE LIABILITY OF ANY OF THE DEBTOR PARTIES THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; PROVIDED, FURTHER, THAT THE DEBTOR AND REORGANIZED DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING THEIR DUTIES PURSUANT TO, OR IN CONNECTION WITH PLAN OR ANY OTHER RELATED DOCUMENT, INSTRUMENT, OR AGREEMENT.

C.      Exculpations

        The Debtor, Reorganized Debtor and their professionals, consultants, representatives, employees, officers, equity holders, directors, managers and agents, and each of their successors and assigns, shall neither have, nor incur, any liability (i) to any person or entity for any post-petition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation, the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; provided that the foregoing "Exculpation" shall have no effect on the liability of any of the parties that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or limit the liability of any professional to its client pursuant to DR 6-102 of the Code of Professional Responsibility; provided, further, that the Debtor and Reorganized Debtor shall be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with Plan or any other related document, instrument, or agreement.

D.      Indemnification of Reorganized Debtor

        The Reorganized Debtor and each of its professionals, consultants, representatives, employees, principals, officers, equity holders, directors, managers and agents, and each of their successors and assigns shall be indemnified and held harmless by the Debtor and the Estate, to the fullest extent permitted by law, solely from the Estate, including any Net Litigation Recoveries, for any losses, claims, damages, liabilities, and expenses, including, without limitation, reasonable attorneys' fees, disbursements, and related expenses which such indemnified parties may incur or to which such indemnified parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of such indemnified parties on account of the acts or omissions in connection with any Exculpated Matter or any Released Matter; provided, however, that the Debtor and the Estate shall not be liable to indemnify any such indemnified party for any act or omission that has been determined by a Final Order as constituting gross negligence or willful misconduct. Notwithstanding any provision herein to the contrary, such indemnified parties shall be entitled to obtain advances from the Estate to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of any such indemnified party in its capacity as such; provided, however, that the Entities indemnified pursuant to this Article receiving such advances shall repay the amounts so advanced upon the entry of a Final Order finding that such indemnified parties were not entitled to any indemnity under the provisions of this Article. PROVIDED FURTHER THAT NOTHING HEREIN SHALL ACT AS A RELEASE OF OR ALLOW INDEMNIFICATION ANY OF THE DEBTOR'S OFFICERS OR DIRECTORS OR INDIVIDUAL GUARANTORS OR INDEMNITORS FOR ANY DEBTS DUE AND OWING TO ALMA OR BERKLEY ON

ACCOUNT OF ANY GUARANTIES OR INDEMNITY AGREEMENTS EXECUTED BY THEM IN FAVOR OF ALMA OR BERKLEY.

E.      Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES, THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO THE GENERAL RELEASE PURSUANT TO ARTICLE VIII(B) OF THE PLAN, (3) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII(C); OR (4) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR, OR ANY OTHER ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND, AGAINST THE DEBTOR, OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF, SUBROGATION, OR RECOUPMENT ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY

SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED FURTHER THAT NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW. NOTWITHSTANDING THE FOREGOING, NOTHING SHALL PREVENT, LIMIT OR OTHERWISE IMPAIR THE RIGHT OF ANY ENTITY, WITH RESPECT TO ANY MATTER THAT IS (A) NOT RELEASED BY THE PLAN OR (B) WITH RESPECT TO A MATTER SUBJECT TO POTENTIAL FUTURE RELEASE FOR WHICH ALL CONDITIONS PRECEDENT TO THE EFFECTIVENESS OF SUCH RELEASE SHALL NOT HAVE YET OCCURRED. NOTWITHSTANDING THE FOREGOING, OR ANY OTHER TERM OR PROVISION OF THIS PLAN, NOTHING HEREIN SHALL AFFECT, LIMIT OR IMPAIR ALMA BANK'S RIGHTS AND CLAIMS UNDER THE ALMA GUARANTY OR THE ALMA MORTGAGE, OR OTHERWISE AGAINST GUARANTORS AND NON-DEBTOR, NON-ESTATE ASSETS, INCLUDING BUT NOT LIMITED TO REAL PROPERTY ENCUMBERED BY THE ALMA BANK SECURED CLAIM, AND FOR ALL PURPOSES OF MAINTAINING, CONTINUING AND ENFORCING THE ALMA GUARANTY AND THE ALMA MORTGAGE, THE ALMA CLAIM AND LIENS SECURING THE ALMA CLAIM SHALL BE DEEMED ALLOWED, NOT RELEASED, OUTSTANDING, UNSATISFIED AND CONTINUING.

F.      Setoffs and Recoupments

Except as otherwise provided herein, the Reorganized Debtor, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off or recoup against any Allowed Claim or Allowed Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any distribution is made on account of such Allowed Claim or Allowed Interest), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtor of any such Claims, rights, and Causes of Action that the Debtor may possess against such Holder.

# ARTICLE IX.

**CONDITIONS PRECEDENT**

A.    Condition Precedent to Confirmation of the Plan

It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived by the Reorganized Debtor:

1.    The Bankruptcy Court shall have entered the Disclosure Statement Approval Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Disclosure Statement Approval Order shall not be stayed and shall be effective immediately upon its entry; and

2.    The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry.

B.    Conditions Precedent to the Effective Date of the Plan

It shall be a condition precedent to the occurrence of the Effective Date of the Plan that the following conditions shall have been satisfied or waived by the Reorganized Debtor:

1.    The Confirmation Date shall have occurred;

2.    The Confirmation Order shall not be subject to any stay; and

3.    Sufficient funds have been collected by the Reorganized Debtor from the SCA Settlement to make the distributions required by Article IV(B) of the Plan.

# ARTICLE X.
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.    Modification and Amendments

Subject to the limitations contained herein, the Debtor reserves the right to modify the Plan as to immaterial terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan expressly reserve the right to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the

Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.      Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or the Effective Date pursuant to 11 U.S.C. § 1127.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Effective Date does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or in undertaking of any sort by the Debtor or any other Entity.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.      Except as otherwise provided in the Plan, Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.       Resolve any matters related to:  (a) the assumption, assignment, or rejection of any Unexpired Lease of Real Property to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the Cure Obligations pursuant to Section 365 of the Bankruptcy Code, or any other matter related to such Unexpired Lease of Real Property; (b) any potential contractual obligation under any Unexpired Lease of Real Property that is assumed; and (c) any dispute regarding whether a real property lease is or was expired;

4.       Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.       Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.       Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.       Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.       Resolve any case, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.       Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation or enforcement of the Plan;

10.       Resolve any case, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

11.       Resolve any case, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid;

12.       Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.       Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release,

indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

14.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

15.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

16.     Determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

17.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

18.     Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

19.     Hear and determine matters concerning Section 1145 of the Bankruptcy Code;

20.     Hear and determine all disputes involving the existence, nature, or scope of the Releases, the Exculpations, the Indemnities and the Injunctions;

21.     Enforce all orders previously entered by the Bankruptcy Court;

22.     Enter an order concluding or closing the Chapter 11 Case; and

23.     Enforce the Releases, the Exculpations, the Indemnities and the Injunctions, as set forth in Article VIII.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     Immediate Binding Effect

Subject to Article IX(B) and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Reorganized Debtor, and any and all Holders of Claims or Interests against or in the Debtor regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in such plan, each Entity acquiring property under such plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired

Leases with the Debtor.  All Claims and Interests shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.  All assets revest in the Reorganized Debtor on Confirmation as provided under 11 U.S.C. § 1141.

B.    Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    Payment of Statutory Fees

All fees payable pursuant to Section 1930(a) of the Judicial Code shall be paid by the Debtor (prior to or on the Effective Date) or the Estate (after the Effective Date) for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  The Reorganized Debtor shall file post-confirmation reports on a quarterly basis on the twentieth day following the end of the quarter until the final decree is issued or the case is dismissed or the case converted to chapter 7 of the Bankruptcy Code.

D.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order with respect to the Plan.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Confirmation Order, shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    Service of Documents

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or Reorganized Debtor shall be served on:

Kafka Construction, Inc.

3924 28th Street
Long Island City, New York 11101
Attn:  Costas Katsifas, President

 with copies to:

Spence Law Office, P.C.
Attn:  Robert J. Spence, Esq.
55 Lumber Road, Ste 5
Roslyn, New York 11579
Telephone:  (516) 336-2060
Email:  rspence@spencelawpc.com

G.      Term of Injunctions or Stays

All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      Entire Agreement

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

**[END OF TEXT. SIGNATURES CONTINUE ON NEXT PAGE]**

Dated: Roslyn, New York
      August 30, 2021

              KAFKA CONSTRUCTION, INC.

              By*: /s/ Christopher Vardaros*
                    Christopher Vardaros, Vice President

Dated: Roslyn, New York
      August 30, 2021

              SPENCE LAW OFFICE, P.C.
              Attorneys for the Debtor

              By*: /s/ Robert J. Spence*
                    Robert J. Spence, Esq.
                    55 Lumber Road, Ste 5
                    Roslyn, New York 11576
                    516-336-2060